**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Roanoke Division**

**DERRIKE ETHAN WALKER,**

   **Plaintiff,**

**v.**             **Civil Action No.** 7:18CV519

                **JURY TRIAL DEMANDED**

**LANDON KYLE JOHNSON,**

**Serve: 1080 Oyler Road**
   **Hardy, VA  24101**

**CHADWICK "CHAD" WAYNE CUSTER,**

**Serve: 2722 Gardner Drive**
   **Salem, VA  24153**

**and**

**JOHN/JANE DOES,**

   **Defendants.**

**COMPLAINT**

1.  This is an action for deprivation of civil rights under the Civil Rights Act, pursuant to 42 U.S.C. § 1983, and related state law claims, including abuse of process and the intentional infliction of emotional distress.  Plaintiff brings this civil rights action to redress the deprivation under color of state law of rights, privileges, and immunities secured to him by the United States Constitution.  Plaintiff seeks compensatory and punitive damages, attorney's fees and costs.

1

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and its pendent jurisdiction over state law claims.

3.   Venue is proper in this District under 28 U.S.C. § 1391(b), as the unconstitutional acts and omissions complained of occurred in the Roanoke Division of the Western District of Virginia.

## PARTIES

4.  Plaintiff Derrike Ethan Walker ("Plaintiff" or "Derrike") is a resident of the Commonwealth of Virginia.

5.  Defendant Landon Johnson is a resident of the Commonwealth of Virginia.  At all times relevant hereto, Defendant Johnson was a Deputy and/or Detective with the Botetourt County Sheriff's Office ("BCSO").  At all relevant times, Defendant Johnson was acting within the scope of his employment with BCSO.

6.  Defendant Chad Custer is a resident of the Commonwealth of Virginia.  At all times relevant times hereto, Defendant Custer was a Deputy and/or Detective with the Botetourt County Sheriff's Office ("BCSO").  At all relevant times, Defendant Custer was acting within the scope of his employment with BCSO.

7.  Defendants John/Jane Does are employees/agents and/or former employees/agents of the BCSO, who participated in a conspiracy to violate Plaintiff's constitutional rights, as well as confidential informants and/or others who participated in the conspiracy to violate Plaintiff's constitutional rights  The true names and capacities of John/Jane Does are presently unknown to the Plaintiff.  Plaintiff alleges on information and belief that each of the John/Jane Does is

2

responsible for the injuries alleged herein.  Plaintiff sues John/Jane Does by such fictitious names and will seek leave to amend this Complaint to add their true names when the same have been ascertained.

8.  All Defendants are sued in their individual capacities.

9.  All of the actions, omissions and conduct complained of were undertaken by the Defendants under color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the Commonwealth of Virginia.  At all material times, all Defendants were state actors. Defendants' conduct represents a reckless or callous indifference to Plaintiff's federally protected rights.

10.  Plaintiff has been, and continues to be, adversely affected by the acts of Defendants and/or their agents.

## STATEMENT OF FACTS

11.  On May 5, 2015, in Case No. 15000039-F, Plaintiff Derrike Ethan Walker was sentenced to three years, suspended, and one year of supervised probation by the Botetourt County Circuit Court for possession of oxycodone.  Plaintiff had struggled with drug addiction for years but was attending classes and working diligently to overcome his drug addiction.

12.  Derrike complied with the conditions of his supervised probation, and on April 19, 2016, his probation officer, Carlie Mueller, informed the Botetourt County Circuit Court that Derrike had complied with the conditions and asked that, based on his progress, he be released from supervised probation.  Mueller reported that Derrike was compliant and reporting as directed.  He had completed the ten-week substance abuse class.

13.  At the time this probation was terminated, Derrike was still on supervised probation for two offenses in Montgomery County, possession of a Schedule II substance and Obstruction of Justice.  Derrike had pled guilty to both offenses on April 15, 2015.  Carlie Mueller was also Derrike's probation officer on the Montgomery County charges.

14.  On April 29, 2016, Derrike was at a gas station, meeting with Kole Bushong about a rental down payment.  Derrike's grandfather had passed away, and Mr. Bushong was going to rent the property.  Defendants Johnson and Custer, who were not in uniform, approached Derrike and Bushong and asked to search their cars.  Derrike refused to give permission to search his car.  Johnson and Custer summoned the drug dogs, and the dogs hit on Bushong's car, but not Derrike's.  Defendants found drugs in Bushong's car, which they gave back to Bushong, then instructed Bushong to leave.  Despite the lack of consent or drug dog alert, Defendants handcuffed Derrike and searched him and his car.  Defendants retrieved a small quantity of drugs, then seized Derrike's car and money.  Upon information and belief, Defendants Johnson and Custer were at the gas station and questioned Derrike and/or Bushong based upon information obtained from a Confidential Informant.

15.  In lieu of arresting Plaintiff, Johnson, Custer and BCSO Dillow asked Derrike to engage in drug transactions for them with the understanding that he could do so to work off any potential charges that could have been brought from the search of the car.  Derrike agreed to help, and BCSO Dillow took Derrike back to his home in Buchanan.  Derrike shared this home with his wife, Olivia Brown, and their young child.

16.  For the next several months, Derrike worked as a Confidential Informant with Johnson and Custer and made drug buys, completing the necessary paperwork to engage in such

4

activity as a Confidential Informant. Johnson, Custer and other BCSO officers watched Derrike's house and observed Derrike, Olivia and their child.

17. Upon information and belief, during this same time, Johnson had the opportunity to observe Derrike's wife, Olivia.

18. Upon information and belief, Johnson and Custer were aware that Derrike was on probation in Montgomery County and that he could be incarcerated for any probation violation.

19. Mueller directed Derrike to come to her office on July 21, 2016, and when he arrived, she informed him that he had violated the terms of his probation for the Montgomery County charges and he would be put in jail immediately.

20. Derrike had complied with Defendant Johnson's and Defendant Custer's request to help BCSO in the belief that no charges would be brought against him for the April 29, 2016 gas station stop.

21. On July 28, 2016, a BCSO Confidential Informant made a buy from Olivia at the Buchanan home. Derrike and Olivia's young daughter was in the home at the time, although Derrike was incarcerated.

22. Later on July 28, 2016, Defendants Johnson and Custer, with uniformed officers, raided Derrike and Olivia's house, kicking down the door to gain entry. They seized money and drugs from the house. At the time of this search, Derrike was incarcerated, and only Olivia, several months pregnant, and their young daughter were living in the home.

23. Upon information and belief, Defendants Johnson and/or Custer had obtained a search warrant for the raid; however, there is no copy of the search warrant in the public Court file.

24. Within days of the raid upon the house, Olivia, in an effort to avoid or lessen the charges that could be brought against her as a result of the July 28, 2016 drug sale, became a Confidential Informant.

25. Almost immediately after agreeing to work as a Confidential Informant, Defendant Custer advised her that he (Custer) would no longer be her law enforcement contact. Instead, she would be working with Landon Johnson.

26. Also within days of the house raid, Defendants Johnson and Custer met with Derrike in jail. Upon information and belief, Derrike did not sign a *Miranda* waiver or written statement. Derrike did not have an attorney present. Derrike advised them that he would assume responsibility for the charges connected with the drugs found in his house during the July 28, 2016 raid if they (law enforcement) would leave his wife and children alone. The officers agreed to this.

27. Around this time, Defendant Landon Johnson and Olivia began a close personal relationship, which turned into a physical sexual relationship in September, 2016. Upon information and belief, Johnson had previously engaged in an inappropriate relationship with another woman involved in a criminal case.

28. In the meantime, despite Derrike's previous cooperation following the car stop, Defendants Johnson and Custer pursued an indictment from the grand jury for the drugs found on April 29, 2016.

29. On August 1, 2016, a Grand Jury issued a true bill against Derrike for possession of Schedule I/II drugs with intent to distribute, in violation of Va. Code § 18.2-248, for the drugs found in Derrike's car and on his person on April 29, 2016. Defendant Custer was a witness at

6

the grand jury proceeding. At the time the Grand Jury returned the indictment, the Certificate of Analysis had not yet been received from the Virginia Division of Forensic Science. The Certificate of Analysis, revealing a small quantity of cocaine and methamphetamine from the April 29, 2016 car search, was not issued until September 2, 2016, a month after the Grand Jury returned the indictment against Derrike.

30. Upon information and belief, on or about the time Defendants Johnson and Custer pursued and/or sought the true bill, Defendant Johnson had begun a close personal relationship with Olivia, and she was working as a Confidential Informant under his direct supervision. While this relationship was developing into what would become a physical sexual relationship, Derrike was incarcerated and facing criminal charges.

31. Derrike was unaware that Olivia was involved in a sexual relationship with Defendant Johnson.

32. On or about mid-August of 2016, Defendant Johnson accompanied Olivia to the Daleville, Virginia office of the Department of Social Services/Child Protective Services ("CPS"), where he advised the case worker that Olivia was a good mother. Photographs of Derrike's and Olivia's Buchanan home were provided as evidence that the home was well maintained and not an unfit environment for children. About a month later, Olivia was informed that she would not be facing any CPS charges as a result of her selling drugs at her home while a young child had been present.

33. Also about this time, Olivia began making buys in her role as a Confidential Informant. Individuals seeking drugs would come to her home, and she would sell them drugs in the living room while Landon Johnson hid in her bedroom.

7

34.  On August 11, 2016, a capias was issued on the Montgomery County probation violation charges.

35.  On August 16, 2016, an attorney was appointed to represent Derrike on the possession with intent to distribute charge resulting from the April 29, 2016 stop at the gas station.

36.  Derrike contacted his attorney, noting that he knew more charges could be coming (the five charges, pertaining to the drugs found in his and Olivia's home on July 28, 2016, which he had agreed to assume responsibility for in exchange for Defendants' promise that Olivia would not be charged and his family would be left alone).  Derrike also advised his attorney that he did not believe the charge of possession with intent to distribute fit his conduct on April 29, 2016, including but not limited to the small quantity of drugs seized.

37.  In the meantime, Defendant Johnson and Olivia continued with their intimate relationship.  Defendant Johnson was coming by her house two to three times per week. Defendant Johnson would discuss Derrike's case with Olivia.  Derrike and his attorney were unaware of the relationship between Johnson and Olivia.

38.  Olivia continued to make drug buys as a Confidential Informant during the month of September.

39.  Derrike's attorney filed a motion for discovery, and a discovery order was entered on October 5, 2016.

40.  Defendants withheld exculpatory and impeachment evidence from Plaintiff, Plaintiff's attorney, and the Court regarding Johnson's misconduct.  Defendants Johnson, Custer and John/Jane Does failed to reveal to Plaintiff's attorney, Derrike, or to the Court that Johnson

8

was involved in an intimate relationship with Derrike's wife, Olivia.  Also, upon information and belief, Defendants failed to disclose to Plaintiff's attorney, Derrike, or the Court the identity of Confidential Informants.

41.  Derrike was reluctant to plead to the possession with intent to distribute charge.  The sentencing guidelines for that charge indicated an incarceration range of 9 months to one year and 10 months.

42.  A plea agreement was offered to Derrike on October 19, 2016, providing for a guilty plea to the possession with intent to distribute charge, in exchange for a five-year sentence, with 3 years and 6 months of the sentence suspended.

43.  Although this sentence was at the upper end of the guidelines range for possession with intent to distribute, beyond what could be expected for a charge of simple possession, and failed to account for mitigating factors such as his cooperation and the relatively small amount of drugs as well as potential defenses to the charge, Derrike accepted it because an agreement had been reached that there would be no further indictments, against either himself or his wife.  Thus, it was his understanding neither he nor Olivia would be charged in connection with the drugs found during the raid on the house.  Nor did Derrike challenge the search of his person and vehicle on April 29, 2016 or raise the issue of his prior cooperation.  Upon information and belief, Defendants Johnson, Custer, and John/Jane Does were aware of this promise that was made to Derrike.  Defendants Johnson and Custer were further aware that they had withheld exculpatory, impeachment and *Brady* evidence from Derrike, Derrike's attorney,  and the Court. Defendants failed to provide this information before the guilty plea.

44. Based on the promise that no further charges would be brought, of which all Defendants were aware, Derrike accepted the plea agreement and pled guilty on October 20, 2016 to possession with intent to distribute the drugs found on April 29, 2016.

45. Defendants withheld the exculpatory evidence of Johnson's sexual relationship with Olivia from Plaintiff, Plaintiff's attorney, and the Court.  Further, upon information and belief, Defendants withheld exculpatory information related to the identity of Confidential Informants, including the identity of the Confidential Informant connected with the April 29, 2016 search of Plaintiff's vehicle and person.

46. Olivia and Defendant Johnson continued their sexual relationship, and on November 10, 2016, Olivia gave birth to her and Derrike's second child.  Defendant Johnson was present at the hospital to assist with the birth and cut the umbilical cord.

47. Significantly, also on November 10, 2016, the drugs seized from the house on July 28, 2016 were sent to the lab for analysis.  These were the drugs for which the Defendants had promised Derrike (and Olivia) would not be prosecuted because he had accepted a lengthy sentence for the charge of possession with intent to distribute in his plea agreement.

48. Upon information and belief, on or about this same time, Defendant Johnson informed Olivia and her mother not to worry about Derrike, that BCSO would bring more charges so that Derrike would not be released anytime soon.

49. Olivia and the children moved in with her mother, Robin McCraw.  Defendant Johnson regularly visited Olivia at Robin's home, often in a BCSO vehicle.  Johnson and Olivia also took weekend trips together.  Derrike was still not aware of the relationship at this time.

50. During the Fall of 2016 and into the early part of 2017, Olivia did not visit her husband in jail, nor did she communicate with him by email. Additionally, he was not seeing his children, nor did he receive information about them.

51. Defendant Johnson did not want Olivia to communicate with her husband. He would listen to calls that Olivia had with Derrike, conversations that would likely be protected by the spousal communication privilege.

52. Defendant Johnson would also examine Olivia's phone at night while she slept.

53. On March 28, 2017, the certificate of analysis for the drugs submitted by Defendants Johnson and Custer on November 10, 2016 was returned, showing illegal substances that had been seized from the house occupied by Olivia on July 28, 2016.

54. In late April/early May 2017, Susan Keith informed Derrike that Olivia and Defendant Johnson were involved in a sexual relationship. Olivia denied the relationship when Derrike questioned her about it.

55. Upon information and belief, in late April/early May 2017, Olivia told Defendant Johnson that Derrike was aware of the affair.

56. Upon information and belief, all Defendants were aware of the affair and of Johnson's desire to keep Derrike incarcerated so that he could continue the relationship with Olivia.

57. Defendant Johnson discussed these indictments with Olivia in June, 2017.

58. On June 5, 2017, five (5) indictments were returned against Derrike for the illegal substances found in the house on July 28, 2016, and again Defendant Custer was a witness at the grand jury proceeding.

11

59.  Upon information and belief, Custer and John/Jane Does were aware of the inappropriate relationship and aware of Johnson's motivation in encouraging and/or seeking these additional charges against Derrike.

60.  Derrike was shocked when he learned of the five new indictments, because he had accepted the plea agreement on October 20, 2016 based on the agreement that no further charges would be brought, including as a result of the July 28, 2016 search of the residence.

61.  Immediately after the indictments were returned, Derrike's mother, Susan Keith, met with Botetourt County Sheriff Sprinkle about the inappropriate sexual relationship between Olivia and Defendant Johnson.  An investigation was launched.

62.  On or about June 10, 2017, Defendant Johnson was no longer employed by the Botetourt County Sheriff's Office.  Defendant Custer also was no longer employed by the Botetourt County Sheriff's Office.

63.  On June 12, 2017, a commitment order on the five charges was filed.  Such an order was filed despite BCSO's knowledge that Johnson had engaged in a sexual relationship with Plaintiff's wife and that, by keeping Plaintiff incarcerated, Johnson could continue to see Olivia. The charges were not dismissed at that time.

64.  On or about June 22, 2017, Derrike was arraigned on the five new charges and requested court appointed counsel.  The charges were not dismissed at that time, despite the BCSO's knowledge that Johnson was involved in a sexual relationship with Olivia.

65.  Upon information and belief, exculpatory, impeachment and *Brady* evidence concerning Defendant Johnson's relationship with Olivia was not provided to Derrike's court-appointed counsel.

12

66. Derrike's court-appointed attorney heard of the inappropriate relationship between Defendant Johnson and her client's wife from another attorney.

67. On July 25, 2017, Derrike appeared in Botetourt County Circuit Court on the five charges and was immediately informed by the judge that the charges would be *nolle prossed*, as opposed to being dismissed.  Upon information and belief, the five charges were *nolle prossed* because Johnson was involved in an intimate relationship with Olivia.

68. Derrike's attorney was led to believe that if Derrike did anything about pursuing a claim connected to the inappropriate relationship between his wife and Defendant Johnson that the *nolle prossed* charges could be brought back.

69. BCSO Lt. Hedricks also threatened Derrike on his way to the BCSO van, saying that if Derrike ever pursued the affair between Defendant Johnson and Olivia, or the five *nolle prossed* charges, he would get a bullet, and if Derrike was ever in jail in Botetourt, he would do all the time in the hole.

70. In November 2017, BCSO gave Olivia $780.00.  Olivia was told that this money was a return of money seized from the house during the July 28, 2016 raid.

71. Derrike was released from incarceration after serving time for the possession with intent to distribute and probation violation charges on August 22, 2018.  After his release, Olivia once again became pregnant, and Johnson told Derrike by telephone that the baby could be his (Johnson's).  Within minutes of this conversation, Johnson arrived at Plaintiff's home and again began taunting Derrike about Johnson's relationship with Olivia.

72. Plaintiff has suffered damages, including loss of liberty, loss of income, loss of employment, emotional distress, depression, stress, alienation from wife and children, severe

13

mental anguish, humiliation, interference with family relationships, and other injury, as a proximate result of the actions of the Defendants.

73.  The actions of Defendants described in this Complaint were taken in bad faith and maliciously, with the intent to deprive Plaintiff of his constitutional rights and to cause Plaintiff harm.

 74.  The aforementioned acts of Defendants were willful, wanton, malicious, oppressive and done with reckless indifference to and/or callous disregard for Plaintiff's rights and justify the awarding of punitive damages.

## CAUSES OF ACTION

## COUNT I - VIOLATION OF 42 U.S.C. § 1983

### (Against Defendants Johnson and Custer)

75.  Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

76.  The actions, as alleged herein, of Defendants Johnson and Custer, employees of the Botetourt County Sheriff's Office acting under color of state law, constitute the deprivation of Plaintiff's constitutional rights, including but not limited to:

a.  Plaintiff's right to due process of law as guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution; and

b.  Plaintiff's right to be free from police harassment and intimidation as provided for in the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

77.  Defendants engaged in a pattern of harassment and intimidation which shocks the conscience and resulted in the deprivation of Plaintiff's liberty and property interests.

14

78.  Defendants concealed the relationship between Johnson and Plaintiff's wife, as well as identity(ies) of other Confidential Informant(s), both prior to and after Plaintiff agreed to plead guilty to the charge of possession with intent to distribute, accepting a sentence at the high end of the sentencing guidelines, notwithstanding his belief that his conduct may not warrant such a charge and that there were potential defenses to the charge and/or mitigating factors which would have resulted in a lower sentence within the guidelines range.  Defendants also knew it was improper to investigate and encourage, pursue, and/or seek criminal charges against Plaintiff while Johnson was involved in a romantic relationship with Plaintiff's wife.  Such relationship also posed a material conflict of interest and impeached Johnson and Olivia's credibility in the criminal proceedings.

79.  Charges were brought against Plaintiff and process was used for the purpose of advancing, fostering, encouraging and continuing the sexual relationship between Johnson and Olivia.  Legal process was used for a wrongful purpose, in violation of Plaintiff's right to due process of law under the United States Constitution and in a manner which casts doubt upon the integrity of the criminal proceedings against him.

80.  Defendants utilized the judicial process, including the investigation and assistance in the prosecution of Plaintiff, for ulterior motives, including but not limited to the continuation of Johnson's adulterous relationship with Plaintiff's wife.  Defendants intentionally withheld and concealed material exculpatory and impeachment evidence from the Plaintiff and the Court, and Johnson listened to privileged communications between Plaintiff and his wife, thereby violating Plaintiff's right to due process of law.  Defendants intentionally withheld and concealed the

15

identities of confidential informants and the romantic relationship between Defendant Johnson and Plaintiff's wife, both before and after Plaintiff agreed to enter into the plea agreement.

81. These actions were taken maliciously and shock the conscience.

82. As a direct and proximate result of these intentional and willful acts of Defendants, Plaintiff has suffered damages, including loss of liberty, loss of income, loss of employment, emotional distress, depression, stress, alienation from wife and children, severe mental anguish, humiliation, interference with family relationships, and other injury.

## COUNT II – CONSPIRACY TO VIOLATE CIVIL RIGHTS

### (Against All Defendants)

83. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

84. Defendants and unnamed co-conspirators acted jointly and in concert to violate Plaintiff's civil rights.

85. All Defendants took some overt act in furtherance of the conspiracy which resulted in the deprivation of Plaintiff's constitutional rights.  Namely, each Defendant either actually participated in the violation of Plaintiff's civil rights or witnessed the violation of Plaintiff's civil rights but failed to intervene or acquiesced in the violations of Plaintiff's civil rights and attempted to conceal the actions of Defendant Johnson with regard to the Plaintiff.

86. Defendants and unnamed co-conspirators positively or tacitly came to a mutual understanding to try and accomplish a common and unlawful purpose.

87.  Defendants' and unnamed co-conspirators' actions were dominated by personal motives.

16

88. The acts and omissions of the Defendants proximately caused Plaintiff's suffering and injuries.

89. The Defendants knowingly participated in a conspiracy to violate Plaintiff's civil rights, thus subjecting Plaintiff to injury in violation of his rights as alleged herein, under the United States Constitution.

90. These actions were taken maliciously and shock the conscience.

91. As a direct and proximate result of these intentional and willful acts of Defendants, Plaintiff has suffered damages, including loss of liberty, loss of income, loss of employment, emotional distress, depression, stress, alienation from wife and children, severe mental anguish, humiliation, interference with family relationships, and other injury.

## COUNT III – ABUSE OF PROCESS

### (Against Defendants Johnson and Custer)

92. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

93. On or about the time the search warrant was issued for the raid upon Plaintiff's house, the subpoena for Defendant Custer's testimony was issued, and the true bill was obtained related to the search of Plaintiff's person and vehicle in April 2016, Defendant Johnson was engaged, and/or desired to be engaged, in a romantic and/or sexual relationship with Plaintiff's wife. Defendant sought, encouraged, and furthered charges against and a lengthy prison sentence for Plaintiff with an ulterior motive and for a wrongful purpose so that Plaintiff would be, and would remain, incarcerated, and Johnson could begin, further, and/or continue his romantic and/or adulterous relationship with Plaintiff's wife.

17

94. Defendant Custer was aware of the ulterior purpose in seeking to bring charges against Plaintiff and participated in the seeking, furthering, and encouraging of charges against Plaintiff in order for Johnson to be able to begin, further, and/or continue his romantic and/or adulterous relationship with Plaintiff's wife.

95. Defendants Johnson and Custer used their status as BCSO employees to encourage and further charges stemming from the April 29, 2016 and July 28, 2016 searches against Plaintiff, including by the use of the search of Plaintiff's home, pursuant to a warrant, to pressure him into agreeing to confess to charges to protect his wife and/or to plead guilty to possession with intent to distribute Schedule I/II controlled substances and/or to accept a sentence at the upper end of the sentencing guidelines for the charges relating to the April 29, 2016 search. Defendants sought and helped to obtain grand jury indictments against Plaintiff on these charges for the sole purpose of keeping Plaintiff incarcerated for a lengthy period of time so that Defendant Johnson could develop and continue his adulterous relationship with Plaintiff's wife.

96. Defendants concealed the relationship between Johnson and Plaintiff's wife, as well as identity(ies) of other Confidential Informant(s), both prior to and after Plaintiff agreed to plead guilty to the charge of possession with intent to distribute, notwithstanding his belief that his conduct may not warrant such a charge and that there were potential defenses to the charge and/or mitigating factors which would have resulted in a lower sentence within the guidelines range. Defendants also knew it was improper to investigate and encourage, pursue, and/or seek criminal charges against Plaintiff while Johnson was involved in a romantic relationship with Plaintiff's wife. Such a relationship also posed a material conflict of interest and impeached Johnson and Olivia's credibility in the criminal proceedings.

97. Defendants had an ulterior purpose and used process in an improper manner in the prosecution of the charges against Plaintiff.

98. These actions constitute abuse of process and were the proximate cause of injury to Plaintiff.

99. In committing these acts of abuse of process, Defendants were intentionally and grossly negligent.

100. These actions were wanton, oppressive, shocking, outrageous, willful and offend generally accepted standards of decency, thus entitling Plaintiff to an award of punitive damages.

101. As a direct and proximate result of these intentional and willful acts of Defendants, Plaintiff has suffered damages, including loss of liberty, loss of income, loss of employment, emotional distress, depression, stress, alienation from wife and children, severe mental anguish, humiliation, interference with family relationships, and other injury.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against Defendant Johnson)

102. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

103. The deliberate, intentional, and reckless acts of Defendant Johnson as alleged herein, which culminated in the violation of Plaintiff's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, were extreme in nature and were atrocious and utterably intolerable, and certainly grossly negligent. These acts amounted to the intentional infliction of emotional distress which Defendant Johnson knew would result in

19

emotional distress and damages.  Such conduct was outrageous and intolerable and offended generally accepted standards of decency and morality.

104.  Upon learning of the relationship between Defendant Johnson and his wife, including the realization of the impact of this relationship upon his criminal proceedings, his decision to enter into the plea agreement, and his period of incarceration, Plaintiff experienced depression and severe mental anguish, began taking antidepressant and anxiety medication, entered a counseling program where he experienced a breakdown, and began engaging in aggressive behavior due to stress.

105.  Johnson's actions were wanton, oppressive, shocking, outrageous, willful and offend generally accepted standards of decency, thus entitling Plaintiff to an award of punitive damages.

106.  As a direct and proximate result of these intentional and willful acts of Defendant, Plaintiff has suffered damages, including loss of liberty, loss of income, loss of employment, emotional distress, depression, stress, alienation from wife and children, severe mental anguish, humiliation, interference with family relationships, and other injury.

WHEREFORE, Plaintiff requests damages, jointly and severally, against the Defendants as follows:

A.  For Count I, for each Defendant named compensatory damages in the amount of one million dollars ($1,000,000.00) and punitive damages in the amount of three hundred fifty thousand dollars ($350,000.00);

B. For Count II, for each Defendant named compensatory damages in the amount of one million dollars ($1,000,000.00) and punitive damages in the amount of three hundred fifty thousand dollars ($350,000.00);

C. For Count III, for each Defendant named compensatory damages in the amount of one million dollars ($1,000,000.00) and punitive damages in the amount of three hundred fifty thousand dollars ($350,000.00);

D. For Count IV, for each Defendant named compensatory damages in the amount of one million dollars ($1,000,000.00) and punitive damages in the amount of three hundred fifty thousand dollars ($350,000.00);

E. For costs and reasonable attorneys' fees; and

F. For such further relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

DERRIKE ETHAN WALKER

By:   /s/ Carrol M. Ching
        Counsel

21

John P. Fishwick, Jr. (VSB No. 23285)
John.Fishwick@fishwickandassociates.com
Monica L. Mroz (VSB No. 65766)
Monica.Mroz@fishwickandassociates.com
Carrol M. Ching (VSB No. 68031)
Carrol.Ching@fishwickandassociates.com
Daniel J. Martin (VSB No. 92387)
Daniel.Martin@fishwickandassociates.com
Fishwick & Associates PLC
30 Franklin Road, Suite 700
Roanoke, Virginia 24011
(540) 345-5890 (telephone)
(540) 345-5789 (facsimile)

Melvin L. Hill (VSB # 24117)
mhilllaw@aol.com
315 Campbell Avenue, SW
Roanoke, Virginia  24016
(540) 342-1851 (telephone)
(540) 342-1853 (facsimile)

22